## Otto G. Weber, Appellant, v. Daniel Keefe et al., Appellees.

### Gen. No. 9,617.

382

Opinion filed February 14, 1941.

CLYDE SMITH, of Dixon, for appellant.

SHELDON & BROWN, of Sterling, for appellees.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The plaintiff, Otto G. Weber, owns a farm in Drainage District No. 1, in Hannehaman township in Whiteside county, Illinois. The farm is located on the east side of the main drainage ditch at the south boundary of the district, near the outlet of the main ditch into Green River. The defendants are drainage commissioners of that district and also own land in the upper or northern part of the district. On July 11, 1939, the plaintiff filed a complaint against the defendants in the circuit court of Whiteside county, charging that defendants, as such commissioners, had failed to provide his land with proper drainage and protection. He sought to recover damages for the loss he thereby sustained by reason of the levee breaking, and the water flooding his farm and destroying his crops.

The defendants filed their answer and admitted the organization of the drainage district, and the ownership of the plaintiff's lands. They admit that part of the assessments had been paid by the landowners in the district. They deny that the ditches in question, were out of repair, and the banks of the levees insufficient in height, thickness and strength to withstand

the water. They aver that the banks of the levees had been kept in good condition for more than 10 years prior to June 20, 1938 (when the levee broke), and aver they were sufficient to protect plaintiff's land from overflow. They aver that there was no intentional negligence by the defendants, and the damage, if any, to the plaintiff, was caused by unusual flood conditions.

The case was tried before the court without a jury. The evidence was introduced by both plaintiff and defendants to sustain their contentions. At the conclusion of the evidence, the court found the defendants not guilty, dismissed the complaint, and assessed the costs of the suit against the plaintiff. It is from this judgment that the appeal is prosecuted to this court.

It is urged by the appellant that the court admitted improper evidence, which was offered by the defendants. The reason advanced why this evidence is inadmissible, is because it is immaterial to the issues in the case. It has long been the law that when a case is submitted to the court without a jury, it will be presumed that the judge will consider only the material evidence offered in the case. Plaintiff's Exhibit No. 6, is a drainage map published by the department of the State government. The court refused to admit this exhibit in evidence. From an examination of this exhibit, we cannot see how the plaintiff's case would be benefited any by its admission in evidence. We do not think the court erred in the admission of the evidence, or rejection of the exhibit.

It is seriously insisted by the appellant that the judgment of the court is against the law, and the evidence in the case. One of the material issues submitted to the court for his determination, was whether the levee, as maintained by the commissioners, was of sufficient height and strength to protect the plaintiff's land from high water, under normal conditions. The court, after hearing the evidence, and giving it care-

ful consideration, uses this language in announcing his decision: "The principal fact offered in support of plaintiff's argument that the dikes were inadequate is that a break occurred in January and as many as eight landowners then urged upon the commissioners that the ditch should be enlarged and the dikes strengthened.

"It does not inevitably follow that the judgment of reasonably prudent men must necessarily be that the dikes were insufficient as soon as the failure occurred in January. Other elements must be considered. Had these dikes been built a short time before and given way in the first test, one might be tempted to conclude that they were inadequate. But when they had stood for at least ten years without a break, a reasonable man would not ignore this experience. He would inquire whether there had been some special circumstances involved other than an inherent defect in design or construction.

"The evidence falls considerably short of establishing any substantial change of conditions which would make new dikes necessary. Cleaning out the ditch might somewhat expedite the flow of water, but not beyond what it had been when first constructed.

"The burden of proof is upon the plaintiff. Upon weighing the conflicting elements of testimony, this court concludes that plaintiff has failed to establish that the design and construction of the dikes as they existed in 1938, were such that a reasonably prudent man would not so construct them. On the contrary, the preponderance of the evidence indicates that a reasonably prudent man would regard the dikes as adequate for their purpose."

It is next insisted the commissioners did not use due diligence in patrolling and maintaining the levee. The court found that the commissioners did use due diligence in the maintenance and care of the levees and the ditches; that they patrolled the dikes for muskrats and

groundhogs, which infested the levees; that they exercised the same care for the repair and maintenance of the levees, as reasonably prudent men would under the same circumstances.

The defendants claim that the break in the levee was not caused by the lack of care on their part, but was caused by unusual flood conditions. The court, in announcing his decision said: "The defendants offered as an explanation or reason for the overflow in 1938 the fact that the early part of the year had been a season of most unusual and extraordinary flood. The plaintiff took issue with this and offered in evidence his Exhibit No. 7 consisting of statistics compiled by the United States Weather Bureau for that year. This exhibit actually supports the contention of the defendants.

"Apart from the exhibit, it is a matter of common knowledge that in 1938, the entire nation was subjected to a period of unprecedented flood conditions in the spring and early summer. Thousands of acres of farm lands were flooded and many cities suffered large damage from rivers and streams attaining unheard of heights.

"But again considering the exhibit in question, it shows that the latter part of 1938 was unusually dry, but that even so, the year as a whole had an excessive precipitation of nearly four inches for the State of Illinois by reason of the wet months in the early part of the year. The excess was much greater in the vicinity of this drainage district. The exhibit shows that at Walnut, a short distance to the south, the excess was 7.03 inches. To the north, directly in the area of this watershed it was still worse. At Dixon, to the northeast, the excess was 12.50 inches; at Morrison to the northwest, the excess was 12.93, and at Freeport, farther north, the excess was 15.74 inches."

The court, after hearing all of the evidence and examining the exhibits introduced in the case, arrived

at the conclusion that the plaintiff had failed to establish his case, as required by law. Unless this court, from reading the evidence, can say that the trial court's finding is against the manifest weight of the evidence, we would not be justified in reversing the case. We have examined the exhibits and read the evidence, as abstracted, and it is our opinion that the trial court properly found that the plaintiff had failed to establish his case by a preponderance of the evidence.

The judgment of the trial court will be affirmed.

*Affirmed.*